## [REDACTED] CIVIL MINUTES – GENERAL     'O'

| Case No. | 2:15-cv-05742-CAS (PLAx) | Date | June 5, 2017 |
|---|---|---|---|
| Title | ALEXSAM INC. V. GREEN DOT CORPORATION ET AL. | | |

Present: The Honorable    CHRISTINA A. SNYDER

| Catherine Jeang | Laura Elias | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Steven Ritcheson | Alfred Shaumyan |
| | J. Ben Clark |

**Proceedings:**    **[REDACTED]**

DEFENDANTS' MOTION TO DISMISS AND STRIKE ALEXSAM'S SECOND AMENDED COMPLAINT AND SPECIAL MOTION TO STRIKE UNDER CALIFORNIA'S ANTI-SLAPP STATUTE (Filed May 1, 2017, Dkt. 239)

## I.  INTRODUCTION

On June 12, 2015, Alexsam, Inc. ("Alexsam") filed a complaint in the Superior Court of California for the County of Los Angeles against Green Dot Corporation ("Green Dot"), Next Estate Communications, Inc. ("Next Estate"), and Does one through ten, inclusive (collectively "defendants"). Dkt.1, Ex. A. The gravamen of plaintiff's complaint is that defendants have breached a prior Settlement Agreement in a patent dispute between the parties. On July 29, 2015, defendants filed an answer to plaintiff's complaint asserting several affirmative defenses, Dkt. 1-2, and a cross-complaint for declaratory judgment, Dkt. 1-3. The same day, defendants filed a notice of removal to this Court. Dkt. 1.

On October 17, 2016, the Court granted plaintiff leave to file a First Amended Complaint ("FAC"). Dkt. 143. On November 4, 2016, defendants filed a motion to dismiss plaintiff's claim for breach of the implied covenant of good faith and fair dealing, which was added to plaintiff's claims when plaintiff filed the FAC. Dkt. 155. On December 13, 2016, the Court granted defendants' motion and dismissed the claim for breach of the implied covenant of good faith and fair dealing. Dkt. 171.

**[REDACTED] CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05742-CAS (PLAx) | Date | June 5, 2017 |
|----------|--------------------------|------|--------------|
| Title | ALEXSAM INC. V. GREEN DOT CORPORATION ET AL. | | |

On April 10, 2017, the Court permitted Alexsam to file a Second Amended Complaint, dkt. 216, which Alexsam filed on April 17, 2017, dkt. 220 ("SAC"). The SAC alleges claims for (1) breach of contract, (2) declaratory judgment, (3) accounting, and (4) intentional misrepresentation.

On May 1, 2017, defendants filed the instant motion to dismiss plaintiff's claim for intentional misrepresentation and strike associated allegations. Dkt. 227 (public), dkt. 239 (sealed). On May 11, 2017, Alexsam filed an opposition. Dkt. 242 ("Opp'n"). On May 22, 2017, defendants filed a reply.[1] Dkt. 249.

Having carefully considered the parties' arguments the Court rules as follows.

## II.    BACKGROUND

Alexsam is the owner of two patents: United States Patent No. 6,000,608 entitled "Multifunction Card System" ("the '608 Patent") and United States Patent No. 6,189,787 entitled "Multifunctional Card System" ("the '787 Patent"). SAC ¶ 8. As described by

---

[1] On June 5, 2017, the Court held a hearing on the instant motion as well as a scheduling conference in this case. During the discussion, a disagreement arose regarding whether this matter is currently set for a jury trial or a bench trial. Plaintiff argued that a jury should decide this case. Defendants argued that plaintiff failed to timely demand a jury trial. Defendants are correct.

None of the initial pleadings in this matter, which were filed in state court, demand a jury trial, see dkt. 1 Exs. A-C, nor do any subsequent pleadings appear to contain a jury trial demand, see L.R. 38-1 ("If the demand for jury trial is included in a pleading, it shall be set forth at the end thereof . . . ."), nor did plaintiff timely file a demand a jury trial outside of the pleadings, see L.R. 38-2 (demand must be made within ten days of service of last responsive pleading addressed to triable issue or within ten days after service of the notice of removal). On July 18, 2016, the Court scheduled this matter for a bench trial commencing September 5, 2017. Dkt. 118. That order appears to have been correct and, in light of the foregoing, plaintiff appears to have waived a jury trial. See Liberty Ins. Corp. v. Sw. Traders Incorp., Case No. 12-cv-02151-JLQ, 2013 WL 12132048, at *6 (C.D. Cal. July 10, 2013) (discussing waiver and attempts to untimely revive a demand for a jury).

**[REDACTED] CIVIL MINUTES – GENERAL**               **'O'**

| Case No. | 2:15-cv-05742-CAS (PLAx) | Date | June 5, 2017 |
|----------|--------------------------|------|--------------|
| Title | ALEXSAM INC. V. GREEN DOT CORPORATION ET AL. | | |

Alexsam, the patented technology enables operators of a stored value card system to provide prepaid debit cards or gift cards for sale and to enable card activation transactions to be performed at select retail locations.  Id. ¶ 23.

On September 26, 2003, Alexsam brought an action against Next Estate in the United States District Court for the Eastern District of Texas alleging that Next Estate had infringed the '608 and '787 patents ("the Texas Litigation").  Dkt. 59, Ex. A (docket in the Texas Litigation), Ex. B (Second Amended Complaint filed by Alexsam in the Texas Litigation).  On or about June 3, 2005, the parties resolved the Texas Litigation by entering into a "Settlement and License Agreement" ("the SLA").[2]  SAC Ex. A.

In accordance with the SLA, the parties filed a stipulated dismissal with prejudice in the Texas Litigation.  SAC Ex. D.  On June 10, 2005, the court accepted the parties' stipulation and dismissed the Texas Litigation.  SAC Ex. E.  The dismissal order provided in pertinent part:

> Each claim made by Alexsam against Next Estate, and each counterclaim made or that could have been made by Next Estate against Alexsam, in this action is hereby dismissed with prejudice on the basis of the settlement reached, pursuant to Fed. R. Civ. P. 41.

Id. at 2.

Each party to the SLA made express warranties and representations.  For example, one paragraph of the SLA provides:

**[REDACTED]**

Defendants allegedly breached the SLA by**[REDACTED]**.  SAC ¶ 27.  Neither Next Estate nor Green Dot has **[REDACTED]**.  Id. ¶ 30.

---

[2] Plaintiff alleges that on or about November 1, 2005, Next Estate changed its name to Green Dot Corporation and that Next Estate is the predecessor of Green Dot. FAC ¶¶ 6; 23.  Plaintiff refers to both defendants, collectively, as Green Dot.  Id. ¶ 6.  For purposes of this order, the Court also refers to defendants as Green Dot.

**[REDACTED] CIVIL MINUTES – GENERAL**    **'O'**

| Case No. | 2:15-cv-05742-CAS (PLAx) | Date | June 5, 2017 |
|----------|--------------------------|------|--------------|
| Title | ALEXSAM INC. V. GREEN DOT CORPORATION ET AL. | | |

More than two years after executing the SLA, on July 27, 2007, Alexsam alleges that it contacted Green Dot to request "details of any transactions that you are performing for activation or recharge that use any banking networks or if a card you are activating or recharging has a BIN associated with it." Id. ¶ 31. On August 14, 2007, Green Dot's General Counsel responded denying that Green Dot's activation process "include[d] the transmission of BIN," and stated that, "[s]ince July 2005, Green Dot has not engaged in any activities that are covered by any claims of the Licensed Patents." Id.

Alexsam sent a second letter to Green Dot on August 28, 2008, stating its contentions that Green Dot owed royalties pursuant to the SLA. Id. ¶ 32. On September 18, 2008, Green Dot's general counsel responded with a letter stating that Green Dot did not believe it owed any royalties because its products were not covered by the '608 and '787 patents. Id. On September 26, 2008, Alexsam asked, "Is Green Dot using cards with BINs for activation/recharge transactions?" Id. On October 3, 2008, Bennett Clark[3] wrote back to Alexsam stating several reasons why Green Dot did not believe its products were covered by Alexsam's patents. SAC Ex. K. Clark continued, "[i]f you wish to make your contentions more specific, and indicate why the use of BINS is relevant to the question of royalties in view of the points made above, Green Dot of course will consider them in good faith. As things stand, however, we do not see a basis to believe that royalties are owed." Id. at 2.

In a letter dated June 2, 2009, Alexsam told Green Dot:

Alexsam will rely on the information that you and others at Green Dot have provided. Based on the information provided by Green Dot, a tolling agreement related to the statute of limitations in [sic] not necessary as the statute of limitations deadline is not in danger of expiring anytime in the foreseeable future. If you later determine that the information we have been given is erroneous, or the facts change regarding Green Dot's use of BINS, please let us know.

SAC ¶ 33. Alexsam alleges that on January 13, 2017, Green Dot provided a document during discovery ("the Rite Aid Document") which allegedly clarifies that "Green Dot has utilized, and likely still does utilize, a BIN to route transactions . . . ." Id. ¶ 42.

---

[3] Bennett is Green Dot's litigation counsel in this case. See Dkt. 10.

**[REDACTED] CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05742-CAS (PLAx) | Date | June 5, 2017 |
|----------|--------------------------|------|--------------|
| Title    | ALEXSAM INC. V. GREEN DOT CORPORATION ET AL. |

According to Alexsam, the Rite Aid Document revealed to Alexsam that Green Dot's representations between August 14, 2007, and January 2010, about Green Dot's royalty obligations were false. Id. ¶ 71. Green Dot allegedly knew that its representations were false and that Green Dot misled Alexsam in order to avoid paying royalties. Id. ¶ 74.

Alexsam seeks actual and punitive damages resulting from the alleged breach of the SLA and Green Dot's alleged intentional misrepresentations.

## III.   LEGAL STANDARDS

### A.   Rule 12(b)(6)

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately,

**[REDACTED] CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:15-cv-05742-CAS (PLAx) | Date | June 5, 2017 |
|---|---|---|---|
| Title | ALEXSAM INC. V. GREEN DOT CORPORATION ET AL. | | |

"[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Furthermore, unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir.1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir.1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir.2001).

**B.    Rule 12(f)**

A motion to strike material from a pleading is made pursuant to Rule 12(f). Under Rule 12(f), the Court may strike from a pleading any "insufficient defense" or any material that is "redundant, immaterial, impertinent or scandalous." A Rule 12(f) motion is not a motion to dismiss for failure to state a claim upon which relief may be granted, and, where not involving a purportedly insufficient defense, simply tests whether a pleading contains inappropriate material. The Court may also strike under Rule 12(f) a prayer for relief which is not available as a matter of law. Tapley v. Lockwood Green Eng'rs, 502 F.2d 559, 560 (8th Cir.1974). The essential function of a Rule 12(f) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir.1993), rev'd on other grounds, 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994). Because of "the limited importance of pleadings in federal practice," motions to strike pursuant to Rule 12(f) are disfavored. Bureerong v. Uvawas, 922 F.Supp. 1450, 1478 (C.D.Cal.1996).

**[REDACTED] CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05742-CAS (PLAx) | Date | June 5, 2017 |
|----------|--------------------------|------|--------------|
| Title | ALEXSAM INC. V. GREEN DOT CORPORATION ET AL. | | |

## IV.   DISCUSSION

### A.   Defendants' Motion to Dismiss for Failure to State a Claim

Plaintiff's intentional misrepresentation claim is predicated upon Green Dot's letters dated August 14, 2007, September 18, 2008, and October 3, 2008.[4]  In the foregoing letters, Green Dot represented that it was complying with the terms of the SLA, **[REDACTED]**.  Plaintiff alleges that Green Dot's repeated statements that it was complying with the SLA were intentional misrepresentations.

"A breach of contract is tortious only when some independent duty arising from tort law is violated."  <u>Erlich v. Menezes</u>, 21 Cal.4th 543, 554 (1999).  Otherwise, the economic loss rule often precludes a party from bringing both contract and tort claims predicated upon the same conduct.  The economic loss rule bars tort claims in contract disputes "unless [the party bringing the claim] can demonstrate harm above and beyond a broken contractual promise."  <u>Robinson Helicopter Co. v. Dana Corp.</u>, 102 P.3d 268, 272 (2004).  It applies "even when the breach is accomplished in a fraudulent manner."  <u>Id.</u> at 277.  Thus, the economic loss rule prevents contract and tort law from "dissolving one into the other" by limiting recovery for breach of a commercial contract to contract damages.  <u>Id.</u>  Plaintiff's claim for intentional misrepresentation is barred by the economic loss rule.

Here, plaintiff does not plausibly allege "harm above and beyond a broken contractual promise."  <u>Id.</u> at 272.  The SAC alleges that Green Dot breached the SLA by **[REDACTED]**.  If Green Dot breached the SLA, then Alexsam may be entitled to damages resulting from Green Dot's breach and/or Green Dot may be forced to pay **[REDACTED]**.  That Green Dot, in addition to paying no royalties, told Alexsam that

---

[4] In the context of plaintiff's intentional misrepresentation allegations, the SAC further alleges that Green Dot's representation in the SLA about **[REDACTED]** were false as well as Green Dot's representations while the SLA was being negotiated.  SAC ¶¶ 66-69.  In opposition to the instant motion, plaintiff expressly disclaims any attempt to base its claim for intentional misrepresentation upon alleged misrepresentations that preceded the execution of the SLA.  Accordingly, the Court proceeds to evaluate only the adequacy of plaintiff's claim for intentional misrepresentation *after* the SLA was executed.

**[REDACTED] CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:15-cv-05742-CAS (PLAx) | Date | June 5, 2017 |
|----------|--------------------------|------|--------------|
| Title | ALEXSAM INC. V. GREEN DOT CORPORATION ET AL. | | |

Green Dot did not owe royalties does not, standing alone, entitle plaintiff to convert its contract claim into a tort claim for fraud. Plaintiff's only alleged injuries resulting from Green Dot's correspondence about royalties were:

> [1] refraining for years . . . from bringing a breach of contract case until 2015; [2] spending valuable . . . time in trying to obtain information from Green Dot as opposed to seeking and enforcing other licenses; and, [3] refraining from attempting to practice the inventions embodied in the Licensed Patents.

SAC ¶ 75. However, none of the foregoing injury allegations are sufficient to support plaintiff's claim for fraud in addition to the claim for breach of contract.

It is of no moment that Alexsam delayed suit for breach of contract – Alexsam does not allege how the delay caused it injury other than Green Dot's accrual of additional overdue royalties. Rather than practice its inventions or obtain other licenses, Alexsam alleges that it relied upon Green Dot's claim that it owed no royalties. However, Alexsam does not explain how Green Dot's alleged fraud relates to Alexsam's willingness to practice its own inventions or seek other licensees. The SLA granted Green Dot **[REDACTED]**. Alexsam's decisions about other potential licenses and its use of its patents appear totally unrelated to Green Dot's alleged fraud. Additionally, Alexsam's claim that, but for Green Dot's fraud, Alexsam would have spent its time "seeking and enforcing other [, presumably more profitable,] licenses" is too conclusory and speculative to support a plausible claim for damages independent of Alexsam's alleged economic losses from Green Dot's breach.

Plaintiff argues that the economic loss rule does not apply to its claim for intentional misrepresentation because "fraud claims are exempted from the restrictions of the ELR." Opp'n at 11 (citing Robinson). However, plaintiff's reliance upon Robinson is misplaced. In Robinson, the California Supreme Court explained how California courts apply the economic loss rule to a party's false representations about performance under certain contracts. The plaintiff, Robinson, was a helicopter manufacturer who sued a helicopter parts supplier, Dana. Dana had been selling Robinson a critical helicopter component and fraudulently affirming that the parts conformed to Robinson's exacting specifications. Id. at 270. The parts began to fail at an alarming rate, forcing Robinson to recall affected helicopters, defend itself against federal regulators, and investigate the

cause of the failure. Id. at 271-72. The Robinson court determined that the economic loss rule did not apply to Robinson's fraud claim because Dana's fraud had exposed Robinson to liability in the event of a crash, disciplinary action by the FAA, and the costs of a recall and investigation. Id. at 274. "But for" the alleged fraud, the plaintiff "would not have accepted delivery" of the parts in the first place and would not have faced these other damages. Id. "Accordingly, Dana's tortious conduct was separate from the breach itself." Id.

Although Robinson permitted a claim for fraud, its holding does not apply to every fraud claim between contracting parties. The Robinson court emphasized that its holding was "narrow in scope and limited to a defendant's affirmative misrepresentations on which a plaintiff relies and *which expose a plaintiff to liability for personal damages independent of the plaintiff's economic loss*." Id. at 276 (emphasis added). Since Robinson, numerous courts have observed its narrow application. See e.g. United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp., 660 F. Supp. 2d 1163, 1183 (C.D. Cal. 2009) (Robinson was "expressly 'narrow' and 'limited' holding"); Westport Ins. Corp. v. Vasquez, Estrada & Conway LLP, Case No. 15-cv-5789-JST, 2016 WL 1394360, at *6 (N.D. Cal. Apr. 8, 2016) (declining to apply Robinson because alleged fraud was related to breach of contract, plaintiff did not allege personal damages, fraud was outside the products liability context, and policy considerations weighed in favor of the economic loss rule). Furthermore, the exception discussed in Robinson appears limited to product liability cases. See JMP Sec. LLP v. Altair Nanotechnologies Inc., 880 F. Supp. 2d 1029, 1043 (N.D. Cal. 2012) ("this Court, like others in California, doubts that Robinson Helicopter has any application outside the products liability context in which it was decided").

In light of the foregoing, the Court declines to apply the Robinson exception to the economic loss rule here for three reasons. First, Green Dot's alleged fraud is directly related to its alleged breach of the SLA. The gravamen of plaintiff's allegations is that Green Dot did not pay royalties, Alexsam asked Green Dot if it should be paying royalties, and Green Dot said it did not think so. Green Dot's contention that it owed no royalties under the SLA was always implicit in its decision not to pay royalties and the parties' dispute here remains fundamentally contractual in nature. That Alexsam elicited affirmative representations about royalties does not convert Alexsam's breach of contract claim into a claim for fraud. Second, as already discussed, Alexsam does not plausibly allege damages aside from economic losses resulting from breach of the SLA. Unlike in

**[REDACTED] CIVIL MINUTES – GENERAL**    **'O'**

| Case No. | 2:15-cv-05742-CAS (PLAx) | Date | June 5, 2017 |
|----------|--------------------------|------|--------------|
| Title | ALEXSAM INC. V. GREEN DOT CORPORATION ET AL. | | |

<u>Robinson</u>, where the plaintiff had plainly suffered several forms of injury in reliance upon Dana's misrepresentations and independent of the parties' contract, Alexsam does not plausibly allege any form of damages independent of its economic losses and overdue royalties. Third, the risks and injuries associated with products liability cases are distinguishable from the risks inherent to the SLA here. <u>Robinson</u>'s reasoning relied heavily upon the additional risks and injuries caused by Dana's fraud. Here, the parties' dispute about the scope of Alexsam's patents and the way in which Green Dot's products function does not expose Alexsam to additional risks and injuries. Alexsam was not exposed to the risk of personal injury liability to third parties; Alexsam was not subject to an invasive federal investigation that might have damaged its company and business; and Alexsam was not forced to recall a product or expend funds investigating a product malfunction. Alexsam may have expended some resources attempting to confirm Green Dot's compliance with the SLA, but Alexsam bargained for the SLA with the understanding that, like any licensor, it would have to monitor Green Dot's compliance with the licensing agreement.

At bottom, plaintiff's claim for intentional misrepresentation is predicated upon Green Dot's alleged bad faith denials of liability under the Agreement. However, California recognizes no such tort except in exceptional and rare circumstances. <u>Freeman & Mills, Inc. v. Belcher Oil Co.</u>, 11 Cal. 4th 85, 103 (1995). Plaintiff's claims remain fundamentally contractual in nature. In light of the foregoing, Alexsam's claim for intentional misrepresentation and plaintiff's request for punitive damages are **DISMISSED**.[5]

### B.    Defendants' Motion to Strike Allegations Pursuant to Rule 12(f)

Defendants argue that plaintiff's allegations and exhibits relating to Bennett Clark should be stricken as immaterial to plaintiff's claims and because they have been added only to threaten defense counsel's reputation. An " '[i]mmaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." <u>Fantasy, Inc. v. Fogerty</u>, 984 F.2d 1524, 1527 (9th Cir. 1993) (quoting Charles

---

[5] Because plaintiff's claim for intentional misrepresentation is barred by the economic loss doctrine, the Court does not reach defendants' other arguments based on the litigation privilege, the applicable statute of limitations, and Rule 9(b).

**[REDACTED] CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05742-CAS (PLAx) | Date | June 5, 2017 |
| --- | --- | --- | --- |
| Title | ALEXSAM INC. V. GREEN DOT CORPORATION ET AL. | | |

A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 706–07 (1990)). "If there is any doubt as to whether the allegations might be an issue in the action, the motion should be denied." William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, California Practice Guide: Federal Civil Procedure Before Trial § 9:386 (2016).

Plaintiff's allegations are not the sort ad hominem attack that might be deemed scandalous, especially where the case remains contractual in nature. Although the Court dismisses plaintiff's claim for intentional misrepresentation, Clark's statements may still be relevant to plaintiff's other claims, in particular the claim for breach of contract. The SLA includes express representations **[REDACTED]**. SAC Ex. A ¶ 2.2. The parties also agreed in the SLA to **[REDACTED]**. Id. ¶ 4. Insofar as Alexsam's correspondence with Clark discussed Green Dot's use of a BIN and the meaning of the claims construction order in the Texas Litigation, the Court cannot say with certainty that Clark's statements are immaterial. Because the pleadings are of limited importance in federal practice, the Court declines to strike plaintiff's allegations. Green Dot's request that the Court strike any reference in the SAC to Green Dot's counsel is **DENIED**.

### C.    Defendants' Motion to Strike the Intentional Misrepresentation Claim Pursuant to California's Anti-SLAPP Statute

"The Legislature enacted section 425.16 [, the Anti-SLAPP statute,] to prevent and deter lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. Because these meritless lawsuits seek to deplete the defendant's energy and drain his or her resources, the Legislature sought to prevent SLAPPs by ending them early and without great cost to the SLAPP target." Soukup v. Law Offices of Herbert Hafif, 39 Cal.4th 260, 278, 46 Cal.Rptr.3d 638, 139 P.3d 30 (2006); see also Vess v. Ciba–Geigy Corp. USA, 317 F.3d 1097, 1109 (9th Cir.2003) (noting that the purpose of the anti-SLAPP statute is "to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation"). Defendants argue that their pre-litigation statements to Alexsam about compliance with the SLA were protected by the litigation privilege. Defendants argue that the claim for intentional misrepresentation should be stricken as an improper attempt to punish defendants for exercising protected speech and petition rights.

### [REDACTED] CIVIL MINUTES – GENERAL     'O'

| Case No. | 2:15-cv-05742-CAS (PLAx) | Date | June 5, 2017 |
|----------|--------------------------|------|--------------|
| Title | ALEXSAM INC. V. GREEN DOT CORPORATION ET AL. | | |

Because the Court dismisses plaintiff's claim for intentional misrepresentation for failure to state a claim, the Court does not reach defendants' arguments regarding the Anti-SLAPP statute. Defendants' request to strike the claim for intentional misrepresentation pursuant to the Anti-SLAPP statute is **DENIED as moot**.

## V.    CONCLUSION

Defendants' motion to dismiss plaintiff's claim for intentional misrepresentation is **GRANTED**. Defendants' request that the Court strike allegations is **DENIED**. Defendants' request that the Court strike the claim for intentional misrepresentation is **DENIED as moot**.

IT IS SO ORDERED.

|  | 00 | 11 |
|--|----|----|
| Initials of Preparer | CMJ | |